UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL MALANOWSKI | ) | CASE NO. 1:13CV763 |
| | ) | |
| Plaintiff | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | **MEMORANDUM AND OPINION** |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Paul Malanowski Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his November 1, 2011 decision in finding that Plaintiff has the residual functional capacity to perform light work (Tr. 25-32). The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

**I.     PROCEDURAL HISTORY**

Plaintiff, Paul Malanowski, filed his application for DIB and SSI on January 14, 2010, alleging that he became disabled on February 1, 2006, but amended his onset date at the hearing to July 3, 2008 (Tr. 151-161, 41). Plaintiff's application was denied initially and on reconsideration (Tr. 63-70). Plaintiff requested a hearing before an ALJ, and, on October 11, 2011, a hearing was held where Plaintiff appeared with counsel and testified before an ALJ, and Kathleen Reis, a vocational expert,

also testified (Tr. 37-53).

On November 1, 2011, the ALJ issued his decision, finding Plaintiff not to be disabled (Tr. 25-32). Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 1-6, 19). Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Section 405(g) and 42 U.S.C. Section 1383(c).

## II.      STATEMENT OF FACTS

Plaintiff was born on September 17, 1962, which made him forty-six years old as of his amended onset date (Tr. 151). Plaintiff has a high school education (Tr. 175). Plaintiff has past work as an injection mold machine tender, unskilled, light; inspector hand packager, unskilled, light; construction worker, semiskilled, very heavy; chemical processing laborer, semiskilled, heavy; material handler, semiskilled, heavy; and two motor driver, semiskilled, medium (Tr. 49-50, 176, 198-205).

## III.     SUMMARY OF MEDICAL EVIDENCE

Plaintiff received treatment at the MetroHealth System (MetroHealth) for his right knee and his low back. Plaintiff also treated at MetroHealth for pancreatitis, but he does not dispute the ALJ's finding with respect to this impairment. He first visited MetroHealth in November 2007, when he came for treatment with a primary care physician after being hospitalized two weeks prior for an acute episode after alcohol intake, from which he had recovered (Tr. 301).

He returned seven months later in June 2008 (Tr. 266-269). At that time, he was seen by Dr. Chandra Veluru for right knee pain (Tr. 266-268). Dr. Maryanne Haddad also evaluated Plaintiff that

day for his right knee pain (Tr. 269).

Plaintiff returned the following month, in July 2008, at which time he reported to Dr. David Blumenthal that he had never seen an orthopedic surgeon (Tr. 263). Dr. Blumenthal recommended that Plaintiff see an orthopedist to determine if he needed surgery (Tr. 264).

Two weeks later, Plaintiff saw an orthopedist, Dr. Ari D. Levine, and reported that he had injured his knee in a bicycle accident fifteen years earlier (Tr. 261). The orthopedist gave him a steroid injection (Tr. 262), recommended more rigid knee bracing, and instructed Plaintiff to follow up in three months to evaluate the injection efficacy (Tr. 262). Plaintiff did not follow up with the orthopedist.

Plaintiff returned to MetroHealth for knee complaints (and a lump under his right arm) a year and a half later, in January 2010, at which time he saw a primary care physician (Tr. 259-260). At that time, the physician advised Plaintiff that no surgery was needed, and referred Plaintiff to an orthopedist (Tr. 260). The following visit in March 2010, he reported that his back hurt and that he had attended physical therapy for it, but had no surgery on his back (Tr. 329). Plaintiff stated that his knee brace was supposed to be ordered and that he was on no medication (Tr. 329). The physician prescribed ibuprofen, naproxen, and physical therapy (Tr. 330).

Plaintiff returned with musculoskeletal complaints a year and a half later, in August 2011 (Tr. 367-369). At that time, Plaintiff reported being more active, and that he had been mowing the lawn (Tr. 367). He reported having constant knee popping and occasional numbness in his right foot and taking only ibuprofen for mild pain, and Tylenol as needed for worse pain (Tr. 367). Plaintiff reported that steroid injections and physical therapy had not helped, and that he did not return due to his inability to afford co-pays (Tr. 367). He reported that he had not been to the orthopedist or received his knee brace due to his inability to afford the co-pay (Tr. 367). The physician instructed Plaintiff

3

that he would need injections and a knee brace before a knee replacement could be considered (Tr. 369). The physician prescribed ibuprofen (Tr. 369).

A month later, in September 2011, Plaintiff began seeing an orthopedist, Jill Schleifer-Schneggenburger, for the first time since July 2008 (Tr. 363-365). At that time, Plaintiff reported knee pain and numbness, and stated that he was taking ibuprofen (Tr. 363). He also reported that he participated in labor activities as needed, such as helping his brother install windows (Tr. 364). Dr. Schleifer-Schneggenburger observed him using a cane in his right hand (Tr. 363). She noted that the numbness could be related to nerve injury secondary to trauma and/or swelling of his right knee (Tr. 365). She referred Plaintiff to physical therapy for strengthening/stability, gave him an elastic brace, and offered him a knee injection, though he declined the injection (Tr. 365). She told him to return in two months (Tr. 365).

Plaintiff began physical therapy in September 2011 (Tr. 358-360). At the initial visit, Plaintiff reported that he was independent with self-care and activities of daily living (Tr. 359). Plaintiff reported that he was scheduled to have a knee replacement when he turned fifty years old, but the physical therapist found that he "appears to have a poor understanding of the need to continue to strengthen the right knee to prepare for his surgery as well as to stabilize the knee" (Tr. 360). The physical therapist noted that Plaintiff did not want to try ambulating with the cane on the correct side (Tr. 360). Plaintiff was very resistive to the physical therapist trying to help use a cane on the correct side, stating that he knew better (Tr. 360). His incorrect usage was causing him to ambulate with increased deviations (Tr. 360).

Diagnostic testing in June 2005 showed that Plaintiff had mild impairment in his low back (Tr. 245). Another test in March 2010 showed that Plaintiff's low back might have spondylolyisis, and had a sclerotic lesion and lucent bone lesion (Tr. 336). Testing of Plaintiff's right knee in July 2008

4

showed no evidence of fracture, dislocation, bone destruction, or dislocation (Tr. 364). His knee had moderate narrowing of the medial knee joint, moderate and mild spurring, calcific density, and moderate joint effusions (Tr. 364).

Physical examinations showed that Plaintiff had full range of motion and no edema in his arms and legs (Tr. 262, 268, 299, 302, 330, 368). He had no instability in extension and no McMurray's sign (Tr. 262). His right knee had some effusion (Tr. 264, 365), mild crepitus (Tr. 264, 368), decreased strength (Tr. 360), and decreased range of motion (Tr. 264, 360, 368). His right knee had a brace in March 2010, and he had decreased strength at that time (Tr. 330). His left knee and all other joints were normal (Tr. 264). Plaintiff's back was observed with a brace in March 2010 (Tr. 329). In September 2011, he had decreased sensation in his right foot (Tr. 359, 365). Otherwise, neurologically, Plaintiff had grossly intact sensation, intact coordination, 5/5 motor power, symmetrical reflexes, normal tone, and intact cranial nerves (Tr. 268, 299, 302, 330).

In April 2009, Eulgio Sioson, M.D. consultatively examined Plaintiff at the request of the state agency (Tr. 247-252). Plaintiff reported that he used a non-prescribed regular cane for one to two years (Tr. 247). He reported that he had a work-related back injury years ago and had therapy, but had no follow-up in the prior three years (Tr. 247). He also reported that he had no pancreatitis flare up since February 2008 (Tr. 247). Upon physical examination, Plaintiff walked with a moderate limp without a cane (Tr. 247). He refused to do heel/toe walking and squatting, due to reported knee pains, but was able to get on and off of the examination table (Tr. 247). Plaintiff's arms and legs had no edema, moderate tenderness in his right knee, and no apparent effusion (Tr. 248). Plaintiff was able to grasp and manipulate with each hand (Tr. 248). Dr. Sioson had difficulty testing Plaintiff's muscles and stability, due to pain (Tr. 248). Plaintiff had minimal lower back tenderness, positive straight leg raising, no sensory deficits, intact and equal knee and ankle reflexes, no muscle atrophy, and no

5

cerebellar signs (Tr. 248). Dr. Sioson opined that, aside from some pain limitations, neuromusculoskeletal data showed no other objective findings that would affect work-related activities, such as walking, climbing, standing, carrying, lifting, handling, sitting, or traveling (Tr. 248).

In April 2010, state agency physician W. Jerry McCloud reviewed the evidence, including Plaintiff's complaints, treatment, physical examinations, and diagnostic testing, in connection with Plaintiff's initial application (Tr. 349-356). Dr. McCloud adopted Dr. Sioson's opinion that, aside from pain limitations and physical examinations, the data showed no other objective findings that would affect work-related abilities (Tr. 355), and concluded that Plaintiff could perform a limited range of work (Tr. 349-356).

In August 2010, another state agency physician, William Bolz, M.D., reviewed the evidence, including the updated medical evidence, and affirmed Dr. McCloud's opinion (Tr. 357).

## IV. SUMMARY OF TESTIMONY

Plaintiff testified that his knee goes out, he suffers from a consistent sore back, and right leg goes numb at the base of the foot (Tr. 43). Plaintiff reported that his knee pain was increased with walking, kneeling, running, and steps (Tr. 43). Plaintiff testified to using a cane since 2006 for stability, as he feels the knee will give out and he will fall (Tr. 44). He further stated that he used his cane in his other hand, because if he uses it in his left hand, it makes his leg hurt more, and he was afraid of falling if the knee gave out (Tr. 44). Bending, lifting, and standing increased his back pain (Tr. 45). Plaintiff reported there was numbness in the area of the right ankle in the morning and after sitting for long periods of time (Tr. 45-46). Plaintiff stated that he could sit for about fifteen minutes, stand for about ten minutes, and walk about five minutes, and lift twenty pounds (Tr. 46). He stated

he was unable to kneel or crawl (Tr. 46).

## V. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits and supplemental security income. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (Sections 20 C.F.R. 404.1520(c) and 416.920(c)(1992);

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* Sections 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in Sections20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d) (1992);

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering his age, education, past work experience and residual functional capacity. *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir.

1990).

## VI. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

## VII. ANALYSIS

Plaintiff raises three issues:

    A.    WHETHER SUBSTANTIAL EVIDENCE SUPPORTS THE LESS THAN LIGHT WORK RESIDUAL FUNCTIONAL CAPACITY AS DETERMINED BY THE ADMINISTRATIVE LAW JUDGE.

  B. WHETHER THE ADMINISTRATIVE LAW JUDGE ERRED IN FAILING TO FIND THAT PLAINTIFF'S SEVERE IMPAIRMENTS DO NOT MEET OR EQUAL 20 C.F.R. PART 404, SUBPART P, APPENDIX 1, LISTING 1.02(A).

  C. WHETHER EVIDENCE SUBMITTED SUBSEQUENT TO THE HEARING IS NEW AND MATERIAL EVIDENCE WARRANTING REMAND.

In this case, the ALJ proceeded through each step of the sequential evaluation process, and found Plaintiff not disabled. The ALJ determined that Plaintiff's degenerative joint disease of the knee, degenerative disc disease of the lumbar spine, and chronic obstructive pulmonary disease were severe impairments, although not of listing-level severity (Tr. 25-26). The ALJ then found that Plaintiff could perform light work that involves no climbing of ropes, ladders, or scaffolds; no more than occasional climbing of ramps and stairs; no more than occasional stooping, kneeling, crouching, or crawling; and no frequent exposure to irritants, such as fumes, odors, dust, gases, and poorly ventilated areas (Tr. 26). The ALJ asked a vocational expert whether someone of Plaintiff's young age, education, past work, and work capacity could perform other work (Tr. 32, 50-51). The vocational expert testified that this hypothetical individual could perform such representative occupations as a cashier, a housekeeping cleaner, and stock clerk or merchandise marker (Tr. 32, 50-51). The ALJ, therefore, determined that Plaintiff did not qualify for benefits (Tr. 32).

Following the ALJ's decision, Plaintiff submitted evidence for the first time to the Appeals Council (Tr. 1-18, 229-230, 372-497). This evidence consists of physical therapy treatment notes dated September 2011 through December 2011 (Tr. 372-421, 426-440). These notes include the initial treatment note (Tr. 372-379), which is already in the record (Tr. 358-362); four treatment notes during a one-month time span from September 30, 2011 through October 28, 2011 (Tr. 380-412); and four treatment notes dating after the ALJ's decision on November 1, 2011 (Tr. 413-440).

This documentation also consists of diagnostic testing in October 2011, showing that Plaintiff's right knee had moderate osteoarthritis, joint effusion (Tr. 387), and mild right peroneal palsy with no active signs of denervation (Tr. 421).

This evidence further consists of two treatment notes with orthopedist Dr. Schleifer-Schneggenburger dated November 18, 2011 and December 29, 2011 – both after the ALJ's decision (Tr. 420-422, 440-441), and a treatment note with Dr. Levine dated February 12, 2012 (Tr. 13-17). At the visit on November 18, 2011, Plaintiff reported that his knee sometimes felt unstable, but that he also had improvement, in that his knee was no longer swollen (Tr. 421). He had been benefitting from his knee brace and Motrin, and experienced good benefit with physical therapy that included reduced "clicking" of his knee (Tr. 421).

Dr. Schleifer-Schneggenburger stated that the notes from the physical therapist were promising (Tr. 421). She noted, however, that Plaintiff "[d]oes not seem to be doing much [of the home exercise program]" (Tr. 421). Plaintiff further reported that he rode his bicycle to the library the prior week, and he was sore after the ride, but that it felt good to be out on his bicycle (Tr. 421). He stated that he had some numbness in his right foot in the mornings, which Dr. Schleifer-Schneggenburger attributed to neuropathy that she believed might have been related to multiple knee traumas in the past (Tr. 421). She concluded that Plaintiff "has been getting some benefit from [physical therapy], ongoing" (Tr. 421).

Dr. Schleifer-Schneggenburger encouraged Plaintiff to perform home exercises after physical therapy is completed, continue wearing his knee brace, continue non-steroidal anti-inflammatory medications (NSAID's) as needed, and take Gabapentin at night (Tr. 421). She instructed him to return in six to eight weeks to assess medication benefit and transition to home exercise (Tr. 421).

The following visit in December 2011, Plaintiff had completed his course of physical therapy, and reported that he had not had much benefit from physical therapy (Tr. 440). However, Dr. Schleifer-Schneggenburger noted that in the past, Plaintiff and the therapist thought there were improvements in his knee pain and stability (Tr. 440). Plaintiff reported that the brace helped, and that he had "some definite benefit" from ibuprofen (Tr. 441).

Dr. Schleifer-Schneggenburger instructed him to use Tylenol as needed, continue using his brace and cane as needed, and continue home exercises (Tr. 441). Plaintiff reported that an orthopedist told him that he would have knee replacement surgery when he turned fifty years old, but Dr. Schleifer-Schneggenburger could find "[n]o confirmation of this report in orthopedic note. Patient did not follow-up with orthopedics" (Tr. 441). Plaintiff asked to speak to a surgeon, so Dr. Schleifer-Schneggenburger referred him to one (Tr. 441).

In February 15, 2012, Plaintiff saw Dr. Levine (Tr, 13-17). At that time, Plaintiff was taking only ibuprofen and wearing a soft knee brace (Tr. 13). Plaintiff had full extension of his right leg and positive Lachmans, and no varus/valgus instability (Tr. 13). Dr. Levine prescribed a hinged knee brace for increased stability, and instructed Plaintiff to continue NSAID and to follow up in two months for a repeat exam and consider an injection, if there was no improvement (Tr. 13).

Plaintiff asserts that the ALJ's finding that Plaintiff could perform a limited range of light work is not supported by the evidence (Pl.'s Br. at 11). Plaintiff now asks this Court to re-weigh the evidence and adopt Plaintiff's subjective complaints in lieu of all of the medical source opinions in the record, and find that Plaintiff could not perform light work (Pl.'s Br. at 11). To support this argument, Plaintiff cites diagnostic testing, physical examinations, and his complaints and cane use (Pl.'s Br. at 11) – evidence that the ALJ already had considered (Tr. 25, 27-31).

A claimant's own description of his symptoms is not sufficient to establish disability. 20 C.F.R. Section 404.1529(a), 416.929(a). Here, the ALJ correctly found that Plaintiff's medically-determinable impairments could reasonably cause the alleged symptoms, but that his statements regarding their intensity were not entirely credible (Tr. 16-17). *See*, 20 C.F.R. Sections 404.1529, 416.929. In doing so, the ALJ specifically considered Plaintiff's treatment, the clinical and diagnostic findings, his daily activities, and the opinion evidence (Tr. 25-31). The ALJ's decision correctly stated the weight given to the claimant's statements and reasons for that weight, based upon the record. Social Security Ruling (SSR) 96-7p, 1996 WL 374186.

The evidence does not support Plaintiff's claims of debilitating pain and limitations. None of the physicians opined that Plaintiff had the limitations as alleged by Plaintiff. Despite Plaintiff's alleged limitations, the ALJ explained that no treating physician opined that Plaintiff had any functional limitations, including inability to stand and walk (Tr. 30-31). *See, Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 596 (6th Cir. 2005). All of the opinions of record are consistent and uncontradicted and support the conclusion that Plaintiff could perform light work (Tr. 27, 248, 266, 268-269, 349-357). Plaintiff's treating physician, Dr. Verulu, stated – after Plaintiff had not previously complained of knee pain (Tr. 301), that the main reason for the visit was a request to fill the disability form because he has right knee pain (Tr. 266). However, Dr. Verulu opined that, to the best of his knowledge, patient is not disabled and employable (Tr. 27, 268). Dr. Haddad, who also evaluated Plaintiff that day, also concluded that Plaintiff was employable (Tr. 269). Furthermore, consultative examiner, Dr. Sioson, opined that, aside from some pain limitations, the data showed no other objective findings that would affect work-related activities, including walking and standing (Tr. 248). As the ALJ explained, Drs. McCloud and Bolz, state agency physicians who are experts in evaluating disability claims, opined that Plaintiff could perform a range of light work (Tr. 349-357).

None of the physicians contradicted these opinions, or opined that Plaintiff was as limited as he alleged.

In addition, it should be noted that Plaintiff required only conservative treatment, which consisted of over-the-counter medication as of the time of the hearing (Tr. 43-44, 48, 363, 367, 369), physical therapy (Tr. 358-360), a knee brace (Tr. 365), and one injection (Tr. 262). Plaintiff was using a cane, though it was not prescribed (Tr. 44, 48, 247), and he refused to use it correctly and had a "poor understanding of the need to continue to strengthen the right knee" (Tr. 360). Although Plaintiff suggested that he was scheduled to have surgery when he turned fifty years old (Tr. 360), the record indicates that his physicians did not recommend surgery, and, instead, recommended only conservative treatment (Tr. 259-269, 329-330, 363-369). In regard to his back, Plaintiff rarely mentioned any back complaints. Plaintiff had not followed up for back complaints for three years, and did not require any surgery (Tr. 247).

Physical examinations showed that Plaintiff had full range of motion and no edema in his arms and legs (Tr, 262, 268, 299, 302, 330, 368). He had no instability in extension and no McMurray's sign (Tr. 262). His right knee had some effusion (Tr. 248, 264, 365), mild crepitus (Tr. 264, 368), decreased strength (Tr. 330, 360), and decreased range of motion (Tr. 264, 360, 368). His left knee and all other joints were normal (Tr. 264). He had decreased sensation in his right foot in September 2011 (Tr. 359, 365), but otherwise, neurologically, Plaintiff had grossly intact sensation, intact coordination, 5/5 motor power, symmetrical reflexes, normal tone, and intact cranial nerves (Tr. 268, 299, 302, 330).

Additionally, despite Plaintiff's complaints of knee popping and occasional numbness, he reported being active and had been mowing the lawn (Tr. 367), and participating in labor activities, such as helping his brother install windows (Tr. 364). Plaintiff also independently cared for his personal needs and performed some household chores (Tr. 47, 339).

13

Hence, the Court finds that substantial evidence supports the ALJ's decision that Plaintiff could perform a limited range of light work.

Plaintiff complains that Dr. Sioson did not have an x-ray of Plaintiff's knee when evaluating Plaintiff, and that, as such, "the consultative examiner did not have the objective evidence demonstrating an underlying medical impairment which could reasonably be expected to produce the claimant's symptoms" (Pl.'s Br. at 12-13). However, there was objective evidence of Plaintiff's knee impairment at Dr. Sioson's examination, as Dr. Sioson performed a physical examination establishing a medically determinable knee impairment (Tr. 247-248). Furthermore, both state agency physicians, Drs. McCloud and Bolz, reviewed the diagnostic testing in conjunction with Dr. Sioson's examination, and concluded that Plaintiff could perform light work (Tr. 349-357). The ALJ had the entire record in assessing Plaintiff's work capacity, and specifically determined that evidence that was produced after the state agency opinions were rendered did not refute them (Tr. 30-31).

Finally, the diagnostic tests merely confirm that there was a medically determinable impairment, i.e., an impairment that results "from anatomical, physiological, of psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. Sections 404.1527(a)(1), 416.927(a)(1). Nevertheless, they do not demonstrate any functional limitations arising from the impairment. *See*, 20 C.F.R. Sections 404.1529(c), 416.929(c).

In conclusion, the ALJ correctly determined, based upon substantial evidence, that Plaintiff had significant limitations by finding him limited to a restricted range of light work.

Plaintiff argues that his impairments met or medically equaled Listing 1.02(A) (major dysfunction of a joint) (Pl.'s Br. at 14-16). A claimant must meet all – not some – of the criteria for a listing to have been met. 20 C.F.R. Sections 404.1525(d), 416.925(d); *Zebley*, 493 U.S. at 530. To meet Listing 1.02(A), Plaintiff had to prove that he had major dysfunction of a joint characterized by

gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s), with involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b. 20 C.F.R. pt. 404, subpt. P, app. 1, Section 1.02(A).

The ALJ reviewed the physical findings, diagnostic testing, and daily activities related to Plaintiff's right knee, which does not demonstrate an inability to ambulate effectively (Tr. 25-31). Plaintiff did not require the use of a hand-held assistive device, such as a walker or two crutches or two canes, limiting the functioning of both arms. None of the physicians opined that Plaintiff's impairments met or equaled the listing. Also, state agency physicians Drs. McCloud and Bolz, experts in evaluating a claimant's impairments under the listings, did not opine that the listing was met or equaled (Tr. 59-62, 349-357).

Plaintiff argues that the ALJ did not consider the combination of his impairments (Pl.'s Br. at 15-16). However, the ALJ did consider the combination of Plaintiff's impairments throughout his decision, including the review of the listings and Plaintiff's residual functional capacity (Tr. 26-31).

In addition, Plaintiff complains that the ALJ did not order a medical expert to testify at the hearing (Pl.'s Br. at 16). However, the ALJ found the record to be complete, which was confirmed by Plaintiff's counsel at the hearing (Tr. 40). Neither Plaintiff nor his counsel requested that the ALJ order the testimony of a medical expert. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) ("The ALJ has discretion to determine whether additional evidence is necessary."); 20 C.F.R. Sections 404.1527(d), 416.927(d) (stating that the determination as to whether a listing is met or equaled is reserved to the Commissioner). In this case, the ALJ did not find that a listing was equaled by the record, or that the record was deficient.

15

Drs. McCloud and Bolz reviewed the evidence under the listings, and the ALJ did not find the record deficient, and that substantial evidence supported the ALJ's finding that Plaintiff's impairments were not of listing-level severity. Hence, the ALJ did not need to order the testimony of a medical expert.

Plaintiff has the burden of proving that evidence submitted for the first time to the Appeals Council is new and material and that good cause exists for not producing it earlier. *See*, 42 U.S.C. Section 405(g) (sentence six); *Allen v. Comm'r of Soc. Sec.*, 561 F3d 646, 653 (6th Cir. 2009); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see,* also, *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The evidence that Plaintiff submitted to the Appeals Council consists of nine physical therapy notes dated from September 2011 through December 2011 (Tr. 372-421, 426-440); diagnostic testing of Plaintiff's right knee dated October 13, 2011 (Tr. 387, 421); two treatment notes from orthopedist Dr. Schleifer-Schneggenburger dated November 18, 2011 and December 29, 2011 (Tr. 420-421, 440-441); and a treatment note from orthopedist Dr. Levine (Tr. 13-17).

The five physical therapy notes (Tr. 372-412) and the diagnostic testing dated October 13, 2011 (Tr. 387. 421) are not new, as these documents were in existence prior to the date of the ALJ's decision. *See, Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990) (explaining that a sentence six remand is "appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding"). Hence, the five physical therapy notes and diagnostic testing do not satisfy the first prong, and these records cannot form the basis of a sentence six remand.

Furthermore, the documents Plaintiff submitted after the ALJ's decision are not material. Evidence is material only if the plaintiff "established that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with [this] evidence." *Foster v. Halter*, 279 F.3d 348, 358 (6th Cir. 2001). To be material, the evidence

16

must relate to the time period at issue – i.e., from the alleged onset date through the date of the ALJ's decision. *Casey*, 987 F.2d at 1233; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (finding evidence of Plaintiff's condition dated outside of the relevant period was not material). Furthermore, reviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated condition. *Presley v. Comm'r of Soc. Sec.*, 23 F.App'x 229, 231 (6th Cir. 2001).

Here, four of the physical therapy notes (dated from November through December 2011) (Tr. 413-421, 426-440), both treatment notes from Dr. Schleifer-Schneggenburger (dated November 18, 2011 and December 29, 2011) (Tr. 420-421, 440-441), and the one treatment note from Dr. Levine (dated February 15, 2012) (Tr. 13-17) pertain to Plaintiff's condition <u>after</u> the date of the ALJ's decision. This evidence does not relate back in time.

The documents submitted for the first time to the Appeals Council do not show significant differences from the evidence of record, and establish no additional *functional limitations* that would preclude the performance of light work. Actually, the additional evidence confirms that Plaintiff continued requiring only conservative treatment – with Tylenol being the only prescribed medication at his last visit with Dr. Schleifer-Schneggenburger (Tr. 441 and 13). Plaintiff reported that his knee brace helped, and that he felt "some definite benefit" from ibuprofen (Tr. 441). Dr. Schleifer-Schneggenburger further noted that Plaintiff reported that he had not experienced much benefit from physical therapy, yet he previously reported that he had positive benefits with physical therapy, and Dr. Schleifer-Schneggenburger found that he "ha[d] been getting some benefit from [physical therapy]" (Tr. 421, 440). Dr. Schleifer-Schneggenburger also noted that Plaintiff "[d]oes not seem to be doing much [of the home exercise program]" (Tr. 421). In recommending continued conservative measures, Dr. Schleifer-Schneggenburger noted that, contrary to Plaintiff's allegation that an orthopedist told him that he would have knee replacement surgery when he turned fifty years

17

old, there was "[n]o confirmation of this report in orthopedic note. In addition, confirming that Plaintiff did not have disabling limitations was his report to Dr. Schleifer-Schneggenburger that he rode his bicycle to the library, and that he was sore afterwards, but that it felt good to be out on his bicycle (Tr. 421). The evidence further confirms that still no treating provider opined that Plaintiff had disabling limitations – which the ALJ specifically noted in finding Plaintiff not disabled (Tr. 30-31). Hence, Plaintiff failed to establish additional functional limitations based on this later-submitted evidence.

As stated in *Casey*, "The only relevant items regarding the four-month period in question show no marked departure from previous examinations. The rest of the material contained in the additional evidence pertains to a time outside the scope of our inquiry." *Casey*, 987 F.2d at 1233. Hence, none of this evidence is material.

Finally, good cause does not exist for failing to submit these records to the ALJ. "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence before the ALJ." *Foster*, 279 F.3d at 357. Actually, some of the evidence came into existence before the date of the ALJ's decision, and Plaintiff gives no reason for not having submitted this evidence to the ALJ. Plaintiff also did not request that the record remain open to submit additional evidence, i.e., Plaintiff did not request that the record remain open until the physical therapy was completed or for further evaluation with an orthopedist. Actually, Plaintiff's counsel informed the ALJ that "the record's complete" (Tr. 40). *See, Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

In this case, Plaintiff does not offer a reason for not submitting the evidence to the ALJ or requesting that the record remain open. Hence, Plaintiff has failed to demonstrate good cause or a reasonable justification for failing to acquire and present this evidence to the ALJ. Therefore, Plaintiff failed to prove that the evidence submitted to the Appeals Council was both new and material, and that

18

good cause exists for not producing it to the ALJ.

### VIII. CONCLUSION

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform light work, and, therefore, was not disabled. Hence, he is not entitled to DIB and SSI.

Dated: June 10, 2014                    */s/George J. Limbert*
                                        GEORGE J. LIMBERT
                                        UNITED STATES MAGISTRATE JUDGE